Jon Jekielek, Esq. (JJ 0536)
Jekielek & Janis, LLP
295 Madison Avenue, 22nd Floor
New York, New York
Tel:  (212) 686-7008
Fax: (212) 542-8883

*Attorneys for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

RAYMOND SCOTT p/k/a BENZINO AND
BIG T ROCK MUSIC PUBLISHING

                Plaintiff,

        vs.

RICH KID MUSIC, INC. and
RHONDO ROBINSON,

              Defendants.

-------------------------------------------------------------x

**11 CV 7276**

**COMPLAINT**
Index No.:

Plaintiff Demands a
Trial by Jury

    Plaintiff, RAYMOND SCOTT p/k/a BENZINO ("Benzino") and Big T Rock

Productions, Inc. ("BTR")(collectively hereinafter referred to as "Plaintiffs") by and

through his  attorneys, Jekielek & Janis, LLP, as and for his Complaint against

defendants RICH KID MUSIC, INC. ("Rich Kid") and RHONDO ROBINSON

("Robinson") (collectively referred to herein as "Defendants"), alleges as follows:

## THE PARTIES

1. Plaintiff Benzino is an individual who resides in the State of Florida.

2. Plaintiff BTR is a corporation duly organized under the law of the State of

Florida.

3.  Upon information and belief, defendant Rich Kid, was and is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business located at 15 Chamin Plaza, Englewood, NJ 07631.

4.  Upon information and belief defendant Robinson, was and is an individual residing within the State of New Jersey, is the CEO and/or President of Rich Kid, and resides at 443 Liberty Road, Englewood, NJ 07631.

5.  Except as hereinafter specifically described, the Defendants, and each of them, were and are acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents, alter egos, and/or employees of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert with the other and all together.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1332(a)(1) as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this controversy is between citizens of different states.

7.  Venue is proper pursuant to 28 USC §1391(a) and this Court has personal jurisdiction over the parties on the grounds that a substantial part of the events and/or wrongful conduct that gave rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

8.  Plaintiff, Benzino, is the song writer and performer in the music industry and has written and performed numerous commercially successful songs throughout the world.

9.  At all relevant times herein, the Plaintiff owned copyright, title and interest in the numerous musical compositions, including the compositions that were the subject matter of the agreement between the parties detailed below and additional compositions (the "Catalog").

10. Benzino, as do most song writers, formed a corporate entity by which he used to collect the publishing royalties generated by the Catalog.

11. Each of the compositions in the Catalog is subject to the payment of mechanical royalties by different record companies throughout the world, including but not limited to Universal where the compositions are sold individually or as a part of the albums.

12. The Mechanical royalties generated by the commercial sale of the songs in the Catalog are paid to the writers of each song based on each writer's respective share of the overall publishing of each song, to wit, 100% at the statutory royalty rate for each country the songs are sold in.

13. Each writer who contributed to the song receives an amount equal to their contribution in writing the song and the writer places a claim with the various record labels and performing rights societies in order to collect mechanical royalties.

14. Each song is comprised of what is known as a "writer's share (50%) of the 9.1 statutory rate and a "publisher's share (50%) of the 9.1 cents of the statutory rate.

15. With respect to the Songs and the Catalog, Benzino is entitled to collect the mechanical royalties due and owed by each third party label which are payable as the "writers share" and BTR is entitled "publishers share" of each mechanical royalty.

16. In addition, the Plaintiffs are entitled to collect public performance royalties from their performance rights societies, in the case BN<IU when the song is played on the radio.

17. The Defendants are in the publishing business and act in the capacity of copyright administrators or as a publishing company for various recording artists and song writers.

18. Specifically, in consideration of a fee, Defendants collect royalties due to their client-artists from third-party recording labels and performing rights societies and licensees, keep an accurate accounting of said payments, hold those royalty payments in trust for the client-artist and then disburse the royalties due to the client-artist with a statement/accounting, less Defendants' fee for their administration services.

19. In or around September of 2005, the Plaintiffs contracted with the Defendants to collect mechanical royalties generated by the Catalog on their behalf throughout the world.

20. The Plaintiffs have never entered into a co-publishing agreement or copyright administration agreement with any third party to collect mechanical royalties generated by the Catalog, nor had the Plaintiff's made their own claims with the labels. prior to entering into the copyright administration agreement entered into with Rich Kid.

21. The Plaintiffs were under no requirement to do so, and the industry standard is that the record label or performing rights society required to pay the mechanical royalty to the writer retains the mechanical royalties while they accrue on behalf of the writer until the writer or an authorized third party submits a claim to those loyalties for payment.

22. In this regard, on or about September 14, 2005, the Plaintiff entered into a three (3) year publishing administration agreement with Defendants whereby Plaintiff assigned a Twenty (20%) Percent interest of the domestic royalties and a Twenty Five (25%) Percent interest of the foreign royalties collected from all titles in the Catalog to the Defendants and in return, the Defendants agreed to collect all royalties generated by the Catalog worldwide, whether by songs' sales or third party licenses, and forward to Plaintiff his share of the royalties collected, to wit, Eighty (80%) Percent for the domestic royalties and Seventy Five (75%) Percent for the foreign royalties (the "Agreement").  A true and accurate copy of the Agreement is annexed hereto as Exhibit 1.

23. In addition, the Defendants, upon execution of the Agreement, as is common place with such administration deals, paid to the Defendants an advance payment to be recouped by the Defendants from the mechanical royalties defendants were to collect under the Agreement and as generated by the Catalog.

24. Plaintiffs relied upon the terms of the Agreement and put their faith and trust in Defendants, purportedly a reputable copyright administrator to collect their share of the mechanical royalties generated by the Catalog.

25. After the Agreement was signed by both parties, upon information and belief, after entering into the Agreement, Defendants misappropriated royalties that lawfully belonged to Plaintiff and were received from various domestic and foreign record labels, including, but not limited to, Sony BMG Music Entertainment, Universal Music Group, Bad Boy/Arista/BMG Entertainment, and MCPS United Kingdom (collectively the "Labels"), and the world over.

26. The Defendants committed this act by submitting certain Copyright License Agreements issued to upon information and belief, the Labels submitted to Defendants quarterly statements of all royalties earned on the Catalog worldwide and which reflected the sales of the Catalog and the royalties owed to Plaintiff generated through those sales.

27. Furthermore, upon information and belief, the Labels remitted to Defendants payments of worldwide royalties earned under the Copyright License Agreements and generated by the commercial worldwide sales and exploitation of the Catalog.

28. Upon information and belief, the Defendants collected royalties that lawfully belonged to Plaintiff and were received from various domestic and foreign record labels, including, but not limited to, Sony BMG Music Entertainment, Universal Music Group, Bad Boy/Arista/BMG Entertainment, and MCPS United Kingdom, and the world over.

29. The Defendants failure to remit payment and account to the Plaintiffs for the mechanical royalties generated by the Catalog and paid to them by the Labels constitutes a material breach of the terms of the Agreement and has caused Plaintiffs serious financial harm.

30. Upon information and belief, Defendants received numerous quarterly statements and payments from the Labels, the amount of which is currently undetermined, but believed to be hundreds of thousands of dollars.

31. The Agreement expired on or about September 14, 2008 and was not renewed by either party. No payments were made to the Plaintiffs by the Defendants after the termination of the Agreement.

32. However, despite the termination of the Agreement, and without the authority, knowledge or consent of Plaintiff, Defendants fraudulently continued, and

continue to this day, to collect royalties from the Labels that were and are generated by the Catalog, although wholly owned by Plaintiff and lawfully due to Plaintiff in full, and without paying Plaintiff any portion of the amounts received from the Labels.

33. Upon information and belief the Defendants have surreptitiously collected and continue to collect 100% of the royalties generated by the Catalog from various record labels for the better part of ten years without Plaintiff's knowledge.

34. To make matters worse, it has become apparent that the Defendants were fraudulently collecting mechanical royalties generated by the Catalog prior to entering into the Agreement.

35. Attorneys for Plaintiffs, while conducting discovery in an unrelated matter, Baxter v. CV – 09-CIV-2977, where the Defendants in this matter were also defendants and similar claims alleged, subpoenaed royalty statements from Universal Records.

36. In response to the subpoenas, Universal produced royalty statements which were mailed to and paid to Rich Kid Music on behalf of the publishing company Black Ed Music, who was a Plaintiff in CV  09-CIV-2977.

37. The Plaintiffs do not know Mr. Baxter who is the sole shareholder and owner of Black Ed Music, Inc.

38. When reviewing the royalty statements that Universal sent to the attorneys for Plaintiff, it indicated that defendant Rich Kid Music had claimed 100% of the mechanical royalties for the song Bang Ta Dis through Mr. Baxter's publishing company and then plaintiff Black Ed Music.

39. Upon information and belief, and according to the royalty statements Plaintiff's counsel obtained from Universal, the amount of money paid by Universal to

7

the Defendants before the Defendants had an authority to collect such royalties is no less than $10,169.08 for the song "Bang Ta Dis" only. A true and accurate copy of the royalty statement provided by Universal and paid to Defendants in or around November of 2005 is annexed hereto as Exhibit 2.

40. The document speaks for itself. The Defendants, put a claim to collect the mechanical royalties generated by "Bang to Dis" through a wholly unrelated company, Black Ed Music, leading Universal to believe that Defendants 1) had the rights to collect the mechanical royalties generated by "Bang Ta Dis" and 2) that they had been conveyed the rights to collect these royalties by Black Ed Music.

41. The accounting period is from July 2005 through September 2005, and pursuant to industry standard would not have been to the Defendants by Universal on or before November of 2005. Therefore this action has been brought within 6 years of the date the Defendants fraudulently collected money generated by "Bang to Dis."

42. Plaintiffs are the only interested holders to the publishing of "Bang to Dis" and therefore the mechanical royalties generated by its sale.

43. Based upon the facts and circumstances and documentary evidence it is certain that the Defendants fraudulently misrepresented themselves to various third party record labels and performing rights societies by representing to said third parties that they had the authority to collect mechanical royalties which belonged to the Plaintiff, this one small example being Universal Publishing.

44. It can also be determined that at some point in time, the Defendants executed a Copyright License Agreement with Universal, which called for the payment of the mechanical royalties to be paid to the Defendants in connection with songs in the Catalog

that belonged to Plaintiffs prior to the Agreement being entered into and that Plaintiffs executed said agreements on behalf of an unrelated company, hoping that no one would become aware of their deception and fraud.

45. Based on Defendants lies and misrepresentations, Universal issued license agreements to the Defendants in connection with songs owned and controlled by Plaintiffs.

46. As a result of Defendants' misrepresentation and unauthorized licensing of the Songs to Universal, Universal paid mechanical royalties to Defendants that rightfully belonged to Plaintiff, including but not limited to the song "Bang to Dis".

47. While this initial fraud happened some time ago, circa July 2005, the Plaintiffs had no way of knowing about this activity, until it was unearthed in discovery. The Plaintiff did not become aware of this fraudulent conduct until in or around June of 2011.

48. The attorneys for Plaintiff did not represent Plaintiffs within a two year time period after the discovery in the Baxter Case.

49. The Plaintiffs only became aware after of the fraudulent activity after they read a magazine article about an unrelated matter which Jekielek & Janis was handling was published and the Plaintiffs contacted Jekielek & Janis, LLP.

50. Upon information and belief the Defendants not only misappropriated Plaintiff's royalties in the United States, but also Plaintiff's royalties in other countries worldwide and royalties being derived from the Songs as well as additional songs from the Catalog, including, but not limited to Canada, United Kingdom and through the MCPS-PRS, a performing rights society in Europe and various countries worldwide.

51. Upon information and belief the only reason the Defendants entered into an agreement with the Plaintiffs was to cover their tracks and in or about 2005 the Defendants approached the Plaintiff with an offer to act as his copyright administrators for Plaintiff's songs worldwide.

52. Despite due demand, Defendants have failed to remit the royalties they misappropriated and lawfully owe to Plaintiffs.

53. To date, the Defendants failed to inform the Plaintiffs of any licensing activities or to pay any royalties to the Plaintiffs as demanded.

54. In effect, the Plaintiff is in the dark about to what third parties the Defendants purported to license the Plaintiff's Catalog to and how and where the Catalog is being exploited; though the Plaintiff first learned of the Defendants' misrepresentations and fraudulent licensing to Universal within two years from the date of the filing of this Complaint.

55. To date the Plaintiff is still unclear on the full scope of the Defendants' fraudulent actions and need to engage in meaningful discovery to determine how many third parties the Defendants' purported to license Plaintiff's Catalog to without due authorization, and how much money the Defendants received for this activity.

## COUNT I

## BREACH OF CONTRACT

56. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

57. As set forth in detail above, with full knowledge and intent, the parties duly negotiated and entered into the Agreement.

58. Plaintiff fully performed in accordance with the terms of such Agreement.

59. As set forth in detail above, the Defendants breached the Agreement by, *inter alia*: (i) fraudulently and unilaterally misappropriating the royalties due to Plaintiff in violation of the Agreement during its term  and after the term had ended; (ii) for failing to provide Plaintiffs with quarterly royalty statements of royalties generated from the Catalog; (iii) misrepresenting to the Labels their authorization to collect royalties on behalf of the Plaintiff after the Agreement was terminated and failing to notify Plaintiff of such fraudulent activities; and (iv) misappropriating the most part of the royalties due to the Plaintiff in violation of the Agreement and their duty of loyalty.

60. As a result of the foregoing breaches of the Agreement, the Defendants caused Plaintiff to suffer financial damages and loss of earnings.

61. Defendants have no defense for their unlawful actions and yet they refuse to make Plaintiff whole.

62. Accordingly, Plaintiff is entitled to an award of monetary damages in an amount to be determined at the trial of the merits of this action, but in no respect less than Two Hundred and Fifty Thousand ($250,000.00) Dollars, as well as an award of costs, pre- and post-judgment interest.

## COUNT II

## BREACH OF FIDUCIARY DUTY

63. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 61 of this Complaint as though fully set forth herein.

64. As set forth in detail above, the parties entered into an arrangement whereby Plaintiff agreed to entrust Defendants to act on Plaintiff's behalf to collect all royalties worldwide on Plaintiff's behalf.

65. By virtue of this agency relationship, Defendants owed Plaintiff a fiduciary duty of care, loyalty and full disclosure.

66. Furthermore, Defendants knowingly and willfully assumed the role of trustees for the beneficiary (Plaintiff) and as trustees they were obligated to hold all royalties received from the Labels in trust for Plaintiff, and then to disburse those funds to Plaintiff on a quarterly basis along with a true and accurate accounting.

67. By virtue of this trustee-beneficiary relationship, Defendants owed Plaintiff a fiduciary duty of care and loyalty.

68. As described in detail above, Defendants breached their fiduciary duties by *inter alia*: (i) fraudulently and unilaterally misappropriating the royalties due to Plaintiff in violation of the Agreement; (ii) failing to provide to Plaintiff with quarterly accounting statement of the royalties generated from the Catalog; (iii) misrepresenting to the Labels their authorization to collect royalties on behalf of Plaintiff after the Agreement was terminated and failing to notify Plaintiff of such fraudulent activities; and (iv) misappropriating the most part of the royalties due to the Plaintiff in violation of the Agreement and their duty of loyalty.

69. As a result of the foregoing breaches of duty of loyalty, the Defendants caused Plaintiff to suffer significant financial injury and loss of earnings, during the term of the Agreement, as well as pre- and post-Agreement, to date.

70. Accordingly, Plaintiff is entitled to an award of monetary damages in an amount to be determined at the trial of the merits of this action, but in no respect less than Two Hundred and Fifty Thousand ($250,000.00) Dollars, as well as an award of costs, pre- and post-judgment interest.

71. In light of the malicious, intentional and/or willful nature of Defendants' actions, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but believed to be in excess of Two Hundred and Fifty Thousand ($250,000.00) Dollars.

## COUNT III

## FRAUD

72. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 70 of this Complaint as though fully set forth herein.

73. As described in great detail above, on or about September 14, 2005, the Defendants knowingly and fraudulently induced Plaintiff into entering into the Agreement by making the following misrepresentations of material facts to Plaintiff: (i) that Defendants would collect all royalties due to Plaintiff in all territories worldwide; (ii) that Defendants would remit the balance of such royalties to Plaintiff less Defendants' twenty (20%) percent fee for domestic royalties and twenty five (25%) percent fee for foreign royalties collected; and (iii) Defendants' authority to collect such outstanding royalties due to Plaintiff would last for a specified period of time of three (3) years from on or about September 14, 2005 to September 14, 2008.

74. Upon information and belief, Defendants knew at the time they made those representations that they were factually false and that they had no intention of abiding by them as evidenced by the facts that the Defendants concealed from the Plaintiff that they were collecting royalties belonging to the Plaintiff from 2001 without the knowledge or approval of the Plaintiff, allowing them to secretly collect and retain Plaintiff's mechanical royalties, and after inducing the Plaintiff to enter into the Agreement with the Defendants on or about September 14, 2005, the Defendants surreptitiously and fraudulently misappropriated and continue to misappropriate the most part of royalties due to the Plaintiff.

75. Furthermore, as set forth in detail above, by virtue of their agency and trustee-beneficiary relationship, Defendants owed Plaintiff a fiduciary duty of care and loyalty, including the obligation to disclose to Plaintiff any and all material facts as it pertains to the Catalog, and an accounting of all sales and royalties generated.

76. As discussed above, even before entering into the Agreement with the Plaintiff, and without Plaintiff's knowledge and/or authorization, in or about September, 2001, the Defendants knowingly and fraudulently induced third party record labels and performing rights societies, including but not limited to Universal, into entering into fraudulent Copyright License Agreements by making the misrepresentations of material facts to Universal that the Defendants were the legal owners of copyrights in the certain songs actually belonging to the Plaintiff and that the Defendants had legal authority to collect such outstanding royalties.

77. Upon information and belief, the Defendants committed fraud upon the Plaintiff by intentionally and knowingly (i) representing themselves to the third parties as

lawful owners of the copyrights to the certain songs in the Catalog; (ii) representing themselves to the third parties as Plaintiff's agents before they actually became them; (iii) that despite having no relationship contractual or otherwise with Plaintiff, the Defendants collected royalties from the Catalog; (iv) the Defendants never disclosed to the Plaintiff that Defendants were collecting Plaintiff's royalties before the execution of the Agreement and that the Defendants were misappropriating said royalties; (iv) the Defendants never disclosed to the Plaintiff the total amount of royalties collected by the Defendants after the execution of the Agreement and that Defendants were misappropriating said royalties; and (v) that despite the expiration of the Agreement, Defendants failed to disclose to Plaintiff that they were continuing to collect royalties on Plaintiff's behalf and that they were misappropriating said royalties.

78. Plaintiff relied to his detriment on Defendants' failure to disclose material facts, omissions of material facts, promises, assurances, and representations by, among other things, foregoing the option of claiming outstanding royalties himself, not contracting with a third party to collect such royalties, not soliciting a third party to sell the Catalog or songs contained therein upon the belief they were not selling, when in fact they were, and conducting his business with the expectation of receiving certain royalty payments on a quarterly basis.

79. At all times, the Defendants knew that Plaintiff was reasonably relying upon their representations and/or omissions of material facts and foregoing other options and opportunities due to his commitment to the Defendants under the Agreement.

80. Accordingly, Plaintiff is entitled to an award of monetary damages in an amount to be determined at the trial of the merits of this action, but in no respect less than

Two Hundred and Fifty Thousand ($250,000.00) Dollars, as well as an award of costs, pre- and post-judgment interest.

81. In light of the malicious, intentional and/or willful nature of Defendants' actions, Plaintiff is entitled punitive damages in an amount to be determined at trial, but believed to be in excess of Two Hundred and Fifty Thousand ($250,000.00) Dollars.

<strong>COUNT IV</strong>

<strong>UNJUST ENRICHMENT</strong>

82. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 80 of this Complaint as though fully set forth herein.

83. As described in detail above, Defendants went outside the scope of the Agreement to collect and misappropriate Plaintiff's royalties.

84. Not only did Defendants collect and misappropriate Plaintiff's royalties during the term of the Agreement, i.e., September 14, 2005 to September 14, 2008, but as it concerns their unjust enrichment, upon information and belief, Defendants collected worldwide royalties on behalf of Plaintiff both prior to entering into the Agreement and after the Agreement was terminated, all the way to date.

85. Defendants have not disbursed to Plaintiff any portion of these royalties, except the initial payment of Ten Thousand Dollars ($10,000.00) upon execution of the Agreement, thereby unjustly enriching themselves at Plaintiff's expense.

86. Upon information and belief the Defendants have continued to collect royalties generated from the Catalog long after the expiration of the Agreement.

87. In equity and good conscience, Plaintiff is entitled to the sum of, or reasonable calculation of such unjust enrichment.

88. Accordingly, Plaintiff is entitled to an award of monetary damages in an amount to be determined at the trial of the merits of this action, but in no respect less than Two Hundred and Fifty Thousand ($250,000.00) Dollars, as well as an award of costs, pre- and post-judgment interest.

## COUNT V

## CONVERSION

89. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 77 of this Complaint as though fully set forth herein.

90. As alleged above, Defendants converted most of the Plaintiff's royalties generated by the commercial exploitation of the Catalog, at all times to date, i.e., before, during and after the Agreement.

91. Defendants continue to intentionally misrepresent to the Labels their authorization to collect said royalties on the behalf of Plaintiff even after the termination of the Agreement.

92. In this regard, Defendants continue to convert 100% of the royalty revenues generated from the commercial exploitation of the Catalog.

93. These actions specifically interfere with Plaintiff's rights to collect royalties from the Songs and other songs from the Catalog to be determined through discovery,

which were collected by the Defendants as a result of their fraudulent misrepresentations and misappropriated by the Defendants without any knowledge of the Plaintiff.

94. Defendants collected these converted royalties and placed them in a specified account which can be traced and/or accounted for.

95. As a result of Defendants' intentional and malicious actions, Plaintiff has suffered significant financial injury.

96. Accordingly, Plaintiff is entitled to an award of monetary damages in an amount to be determined at the trial of the merits of this action, but in no respect less than Two Hundred and Fifty Thousand ($250,000.00) Dollars, as well as an award of costs, pre- and post-judgment interest.

## COUNT VI

## IMPOSITION OF A CONSTRUCTIVE TRUST

97. Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 95 of this Complaint as though fully set forth herein.

98. As set forth in detail above, by virtue of their agency and trustee-beneficiary relationship, Defendants owed Plaintiff a fiduciary duty of care, loyalty and full disclosure, and breached said fiduciary duties by committing the fraud set forth herein.

99. For the foregoing reasons, Defendants are constructive trustees over the royalties collected and to be collected with respect to the Catalog and/or any other proceeds acquired thereof on behalf of Plaintiff, the beneficiary.

100.   By virtue of the foregoing, Plaintiff is entitled to the imposition of a constructive trust upon all royalties collected by Defendants to date and those to be collected.

101.    Furthermore, as discussed above, in September 2005, Defendants promised Plaintiff that they would collect all royalties due to Plaintiff derived from the Catalog for a period of three (3) years.

102.    In reliance upon said promises and representations, Plaintiff signed the Agreement and transferred a portion of his interest in the Catalog to Defendants, thereby granting Defendants the appearance of a legitimate interest in the Catalog.

103.    Upon information and belief, Defendants used this grant of authority and the signed Agreements to defraud Plaintiff and the Labels.

104.    As set forth in detail above, Defendants failed to disclose their fraud and that they were collecting Plaintiff's royalties worldwide and even after the termination of the Agreement, to date.

105.    As a result of the foregoing breaches of duty of loyalty and care, and fraud, Defendants (i) have been unjustly enriched and (ii) have caused Plaintiff to suffer significant financial injury and loss of earnings, during the term of the Agreement, as well as pre- and post-Agreement, to date.

106.    Plaintiff has no adequate remedy at law.

107.    Accordingly, Plaintiff is entitled to the imposition of a constructive trust to be place upon all royalties previously collected, to date, and all future royalties to be disbursed by the Labels, and should be deposited in a trust account with the Court until this matter is resolved.

## COUNT VII

## ACCOUNTING

108.    Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 106 of this Complaint as though fully set forth herein.

109.    As set forth in detail above, pursuant to the Agreement, Defendants were entrusted with the collection and disbursement of money owed to Plaintiff, thereby imposing upon Defendants the burden of providing Plaintiff with a true and accurate accounting every quarter.

110.    Furthermore, by virtue of their agency and trustee-beneficiary relationship, Defendants owed Plaintiff a fiduciary duty of care and loyalty, which they breached.

111.    Despite the foregoing obligations Defendants had under the Agreement and as fiduciaries, Plaintiff has never received an accounting from the Defendants.

112.    Upon information and belief, Defendants have received numerous statements and accountings from the Labels with respect to any and all royalty payments made on the Catalog, none of which Defendants have provided to Plaintiff.

113.    Plaintiff has made numerous demands for an accounting, such demands repeatedly ignored by Defendants.

114.    Accordingly, Plaintiff is entitled to a true and accurate accounting with respect to any and all royalty payments made on the Catalog, to date.

## COUNT VIII

## PERMANENT INJUNCTION

115.    Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1 through 113 of this Complaint as though fully set forth herein.

116.    As set forth above, Defendants have defrauded Plaintiff and continue to collect royalties from the Labels, despite having no lawful right or authority to do so.

117.    As a result, Plaintiff has suffered and continues to suffer permanent, imminent and irreparable harm.

118.    Plaintiff has no adequate remedy at law.

119.    Accordingly, for the foregoing reasons, Plaintiff is entitled to an order: (i) enjoining Defendants from soliciting, requesting and/or demanding that the Labels pay to Defendants any further royalties pertaining to the Catalog; (ii) liquidating, assigning, and/or transferring any and all of the Catalog royalties currently in their possession or control to anyone other than Plaintiff or until order of the Court; (iii) directing that Defendants place any and all of the Catalog royalties currently in their possession or control into a trust account overseen by the Court or anyone appointed by the Court; and (iv) directing that the Labels be directed and/or Defendants re-direct any and all of the Catalog royalties to be paid to Defendants into a trust account overseen by the Court or anyone appointed by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by the FRCP.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for relief on the causes of action stated above against the Defendants as follows:

a.    On the First through Fifth Counts, that Plaintiff be awarded compensatory damages in an amount to be determined at trial and which is otherwise incalculable at this time, but is not less than Two Hundred and Fifty Thousand ($250,000.00) Dollars,

b.      On the Second and Third Count, that Plaintiff be awarded punitive damages in an amount to be determined at trial, but in no event less than Two Hundred and Fifty Thousand ($250,000.00) Dollars.

c.      On the Sixth Count, that Plaintiff be awarded the imposition of a constructive trust to be placed upon all royalties previously collected, to date, and all future royalties to be disbursed by the record labels, and should be deposited in a trust account with the Court until this matter is resolved;

d.      On the Seventh Count, that Defendants be directed to provide Plaintiff with a true and accurate accounting with respect to any and all royalty payments made on the Catalog, to date;

e.      On the Eighth Count, that Plaintiff be awarded an order: (i) enjoining Defendants from soliciting, requesting and/or demanding that the Labels pay to Defendants any further royalties pertaining to the Catalog; (ii) liquidating, assigning, and/or transferring any and all of the Catalog royalties currently in their possession or control to anyone other than Plaintiff or until order of the Court; (iii) directing that Defendants place any and all of the Catalog royalties currently in their possession or control into a trust account overseen by the Court or anyone appointed by the Court; and (iv) directing that the recording labels be directed and/or Defendants re-direct any and all of the Catalog royalties to be paid to Defendants into a trust account overseen by the Court or anyone appointed by the Court;

f.      That Plaintiff be awarded pre- and post-judgment interest, their attorneys' fees, cost and disbursements; and

g.     That Plaintiff be awarded all other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 14, 2011

JEKIELEK & JANIS, LLP

By: _____
Jon D. Jekielek (JJ 0536)
295 Madison Avenue, 22nd Floor
New York, New York 10017
Tel: (212) 686-7008
Fax: (212) 542-8883

*Attorneys for Plaintiff*